No. 24-40527

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

*v.*

GERARDO VILLARREAL,
*Defendant–Appellant.*

---

On Appeal from the United States District Court for the
Southern District of Texas, McAllen Division
Criminal Action No. 7:23-CR-1250-4

---

## BRIEF OF APPELLANT GERARDO VILLARREAL

---

Simran W. Singh
VERITUM LAW GROUP, PLLC
1200 W. Auburn Ave., Ste. 490
McAllen, Texas 78504
Tel:  (956) 502-0949
Fax:  (956) 502-0999
simran@veritumlaw.com

Uriel A. Guajardo
STATESMAN LAW FIRM, PLLC
1200 W. Auburn Ave., Ste. 490
McAllen, Texas 78504
Tel:  (956) 515-2551
Fax:  (956) 515-2511
alex@statesmanlex.com

COUNSEL FOR DEFENDANT–APPELLANT

i

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 of the Fifth Circuit Rules have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| | | |
|---|---|---|
| (1) | **District Judge:** | Hon. Randy Crane |
| (2) | **Appellant:** | Gerardo Villarreal |
| (3) | **Appellant's Counsel:** | Uriel A. Guajardo<br>STATESMAN LAW FIRM, PLLC |
| | | Simran W. Singh<br>VERITUM LAW GROUP, PLLC |
| (4) | **Appellee:** | United States of America |
| (5) | **Appellee's Counsel:** | Alamdar S. Hamdani<br>United States Attorney |
| | | Carmen Castillo Mitchell<br>Assistant United States Attorney |

*/s/ Simran W. Singh*
SIMRAN W. SINGH

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests oral argument. This appeal raises significant legal questions regarding the district court's disposition of his motion to suppress. Counsel believes oral argument would benefit the Court.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................ii

STATEMENT REGARDING ORAL ARGUMENT.........................................iii

TABLE OF AUTHORITIES................................................................vi

STATEMENT OF JURISDICTION ................................................xi

ISSUES PRESENTED ..................................................................2

STATEMENT OF THE CASE ........................................................2

   I.   Procedural History ............................................................3

  II.  Factual Background.........................................................4

       A.  *The Traffic, Search, and Arrest* ...............................4

       B.  *The Motion to Suppress, Response, and Hearing* ..................8

SUMMARY OF THE ARGUMENT ...............................................12

STANDARD OF REVIEW ........................................................13

ARGUMENT ..........................................................................14

  A.  The District Court Erred in Not Finding That the Deputy Unnecessarily Prolonged or Delayed the Appellant Beyond the Time Reasonably Required to Complete the Mission of the Stop. 14

     i.  *The deputy's continued detention is devoid of reasonable suspicion of additional criminal activity or consent necessary to extend the mission of the stop* ...........................14

    ii.  *The deputy did not diligently pursue a means of investigation to verify or dispel his initial suspicions without unnecessary prolongation* .........................................................25

iii.   *The deputy's prolongation of the stop to accommodate the dog sniff was unjustified* .............................................................. 32

B.   The District Court Erred in Finding That the Deputy Would Have Found the Incriminating Evidence Pursuant to an Inventory Search Under the Inevitable Discovery Doctrine .......................... 38

i.   *The district court's oral ruling* ............................................... 38

ii.   *The deputy's testimony did not establish a standardized departmental policy for impounding and inventorying vehicles nor that an administrative search was reasonably probable along with active pursuit of an alternative investigation* ..... 42

iii.   *The departmental policy does not sufficiently limit the discretion of law enforcement* ................................................ 63

CONCLUSION .......................................................................................... 66

CERTIFICATE OF SERVICE ........................................................................ 68

CERTIFICATE OF COMPLIANCE ................................................................. 69

## Table of Authorities

*Florida v. Jardines,*
    569 U.S. 1 (2013) ................................................................. 38

*Nix v. Williams,*
    467 U.S. 431 (1984) ...................................... 55, 57, 41, 63

*Rodriguez v. United States,*
    575 U.S. 348 (2015) .................................................. 28, 14

*Terry v. Ohio,*
    392 U.S. 1 (1968) ................................................................. 16

*Colorado v. Bertine,*
    479 U.S. 367 (1987) .................................................. 54, 58

*Florida v. Wells,*
    95 U.S. 1 (1990) ................................................................. 66

*Navarette v. California,*
    572 U.S. 393 (2014) ......................................................... 22

*United States v. Alvarez-Porras,*
    3 F.2d 54 (2d Cir.) ............................................................. 62

*United States v. Lozano-Alvarez,*
    429 F. Supp. 3d 334 (S.D. Tex. 2019) .............................. 16

*United States v. Martinez,*
    102 F.4th 677 (5th Cir. 2024) ................................. 23, 16, 22

*United States v. Williams,*
    930 F.3d 44 (2d Cir. 2019) ........................................ 58, 55

Brigham, 382 F.3d at 511; *Windham v. Harris Cnty.,*
    875 F.3d 229 (5th Cir. 2017) ........................................... 26

*United States v. Grigsby,*
    No. CRIMINAL ACTION H-21-356, 2022 U.S. Dist. LEXIS 70837,
    (S.D. Tex. Apr. 18, 2022) ................................................. 61

*United States v. Morillo*,
   No. 08 CR 676 (NGG), 2009 U.S. Dist. LEXIS 94421, (E.D.N.Y. Aug.
   12, 2009) ........................................................................... 52

*United States v. Andrews*,
   22 F.3d 1328 (5th Cir. 1994) ................................... 63-64, 66, 6542, 65

*United States v. Ballard*,
   573 F.2d 913 (5th Cir. 1978) ......................................................... 22

*United States v. Banuelos-Romero*,
   597 F.3d 763 (5th Cir. 2010) ......................................................... 18

*United States v. Brigham*,
   382 F.3d 500 (5th Cir. 2004) ......................................................... 18

*United States v. Brookins*,
   614 F.2d 1037 (5th Cir. 1980) ....................................................... 41

*United States v. Bullock*,
   71 F.3d 171 (5th Cir. 1995) .......................................................... 56

*United States v. Castillo*,
   804 F.3d 361 (5th Cir. 2015) ..................................................... 21, 22

*United States v. Cavitt*,
   550 F.3d 430 (5th Cir. 2008) ......................................................... 17

*United States v. Cherry*,
   759 F.2d 1196 (5th Cir. 1985) ................................... 58, 61, 60, 63, 62

*United States v. Como*,
   53 F.3d 87 (5th Cir. 1995) ........................................................... 56

*United States v. De Reyes*,
   149 F.3d 192 (3d Cir. 1998) ......................................................... 41

*United States v. Doe*,
   801 F. Supp. 1562 (E.D. Tex. 1992) ................................................ 57

*United States v. Foots*,
   340 F. App'x 969 (5th Cir. 2009) .................................................... 56

*United States v. Glenn,*
    931 F.3d 424 (5th Cir. 2019) ............................................................ 18

*United States v. Gorski,*
    852 F.2d 692 (2d Cir. 1988) ............................................................ 52

*United States v. Grant,*
    349 F.3d 192 (5th Cir. 2003) ...................................................... 27, 34

*United States v. Griffin,*
    502 F.2d 959 (6th Cir.) ................................................................ 62

*United States v. Hellman,*
    556 F.2d 442 (9th Cir. 1977) ...................................................... 52, 51

*United States v. Holland,*
    No. H-09-512, 2011 U.S. Dist. LEXIS 5261 (S.D. Tex. Jan. 20, 2011)
    ............................................................................................ 55

*United States v. Howard,*
    No. 9:16-CR-15(4), 2016 U.S. Dist. LEXIS 173533 (E.D. Tex. Nov. 14,
    2016) ...................................................................................... 16

*United States v. Ibarra,*
    493 F.3d 526 (5th Cir. 2007) ........................................................... 13

*United States v. Ibarra,*
    725 F. Supp. 1195 (D. Wyo. 1989) ................................................... 53

*United States v. Jackson,*
    596 F.3d 236 (5th Cir. 2010) ...................................................... 40, 44

*United States v. Jones,*
    565 U.S. 400 (2012) ..................................................................... 38

*United States v. Labrador-Peraza,*
    563 F. Supp. 3d 568 (W.D. La. 2021) .................................... 35, 26-27

*United States v. Lage,*
    183 F.3d 374 (5th Cir. 1999) ........................................................... 56

*United States v. Lamas,*
    930 F.2d 1099 (5th Cir. 1991) .................................................. 3, 60, 2

*United States v. Lindsay*,
   No. A-13-CR-032-LY, 2013 U.S. Dist. LEXIS 103410 (W.D. Tex. July
   23, 2013) ................................................................................ 35

*United States v. Lyons*,
   486 F.3d 367 (8th Cir. 2007) ................................................ 38

*United States v. McKinnon*,
   681 F.3d 203 (5th Cir. 2012) ................................................ 42

*United States v. Nevatt*,
   960 F.3d 1015 (8th Cir. 2020) (per curiam) ...................... 54

*United States v. Ochoa*,
   667 F.3d 643 (5th Cir. 2012) ................................................ 59

*United States v. Perkins*,
   No. 23-40356, 2024 U.S. App. LEXIS 17022 (5th Cir. July 11, 2024)
   ................................................................................................ 16

*United States v. Reyes*,
   963 F.3d 482 (5th Cir. 2020) ................................................ 22

*United States v. Sanchez-Pena*,
   336 F.3d 431 (5th Cir. 2003) ........................................ 18, 17

*United States v. Santiago*,
   310 F.3d 336 (5th Cir. 2002) ........................................ 17, 18

*United States v. Seals*,
   987 F.2d 1102 (5th Cir. 1993) .............................................. 59

*United States v. Shen*,
   749 F. App'x 256 (5th Cir. 2018) ........................................ 38

*United States v. Smith*,
   506 F. App'x 319 (5th Cir. 2013) ........................................ 17

*United States v. Smith*,
   952 F.3d 642 (5th Cir. 2020) ................................................ 16

*United States v. Spears*,
   636 F. App'x 893 (5th Cir. 2016) .................................... 16, 28

*United States v. Thomas,*
   787 F. Supp. 663 (E.D. Tex. 1992) ..................................................... 41

*United States v. Walker,*
   49 F.4th 903 (5th Cir. 2022) ........................... 40, 58-59, 42, 59, 42, 41

*United States v. Walker,*
   No. H-20-222, 2021 U.S. Dist. LEXIS 47011 (S.D. Tex. Mar. 12, 2021)
   ................................................................................................. 59

*United States v. Watkins,*
   13 F.4th 1202 (11th Cir. 2021) ......................................................... 44

*United States v. Williams,*
   39 F.4th 1034 (8th Cir. 2022) ........................................................... 54

*United States v. Wise,*
   877 F.3d 209 (5th Cir. 2017) ............................................................ 13

*United States v. Zavala,*
   541 F.3d 562 (5th Cir. 2008) ...................................................... 26, 55

*Whren v. United States,*
   517 U.S. 806 (1996) ........................................................................ 15

## Other

Tex. Transp. Code Ann. § 504.945 ................................................. 25, 5

U.S. Const. amend. IV ....................................................................... 14

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Texas entered judgment of conviction and sentence in this case on August 6, 2024.  Counsel timely filed a notice of appeal on August 13, 2024.  This Court has jurisdiction under Title 18, Section 3742, and Title 28, Section 1291, of the United States Code.  18 U.S.C. § 3742; 28 U.S.C. § 1291.

No. 24-40527

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

*v.*

GERARDO VILLARREAL,
*Defendant–Appellant.*

---

On Appeal from the United States District Court for the
Southern District of Texas, McAllen Division
Criminal Action No. 7:23-CR-1250-4

---

## BRIEF OF APPELLANT GERARDO VILLARREAL

---

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

This appeal concerns the unreasonable prolongment of a traffic stop, and the sufficiency of evidence required to invoke the inevitable discovery doctrine through a hypothetical impoundment and inventory search. As this Court has so eloquently stated, "When the police forego legal means of investigation simply in order to obtain evidence in

1

violation of a suspect's constitutional rights, the need to deter is paramount and requires application of the exclusionary rule." *United States v. Lamas*, 930 F.2d 1099, 1104 (5th Cir. 1991).

## ISSUES PRESENTED

The Appellant presents the following issues in the instant matter for review by the Court:

(1)    Whether the district court reversibly erred by denying the Appellant's motion to suppress evidence because the deputy's prolongation of the stop was unjustified.

(2)    Whether the district court reversibly erred in denying the Appellant's motion to suppress evidence because it was too speculative to find that the deputy would have impounded and inventoried the Appellant's vehicle, and further, would have found the incriminating evidence under the inevitable discovery doctrine.

## STATEMENT OF THE CASE

This case concerns a Fourth Amendment challenge arising out of the denial of a motion to suppress evidence from a traffic stop filed by the Appellant. The Appellant argued that the deputy had unreasonably prolonged the stop beyond what was necessary to complete the mission, and that the canine's entry of the vehicle prior to any alert to the presence of drugs was improper.

The district court suggested it would have ruled in the Appellant's favor on the basis of the canine's wrongful entry, but nonetheless upheld the admissibility of the seized evidence on the basis that the deputy would have found the firearm and controlled substance pursuant to an impounding and inventory search under the inevitable discovery doctrine. The Appellant appeals that ruling arguing that the deputy's prolongment of the traffic stop was unreasonable, and assuming *arguendo* that it was reasonable, that the Government failed to meet its burden under the inevitable discovery doctrine.

## I.    Procedural History

On August 21, 2023, the Appellant was arrested on state charges of being a felon in possession of a firearm, and possession of a controlled substance (cocaine) at a traffic stop. (ROA.16–17.) That same day, the federal government also charged the Appellant with being a felon in possession of firearm. (*Id.*) The Appellant was later federally indicted on the firearm charge stemming from the traffic stop as well as other charges from an unrelated conspiracy on September 6, 2023. (ROA.21.)

The Appellant then filed his motion to suppress evidence stemming from the traffic stop on March 1, 2024. (ROA.127.) The Government filed

its response thereto with an attached affidavit from the arresting deputy on April 8, 2024. (ROA.171–84.)  At a hearing on April 25, 2024, the district court orally denied the motion. (ROA.274.)  On December 18, 2023, and June 3, 2024, pursuant to a written plea agreement, the Appellant pled guilty to second and third counts against him, respectively, in an amended sealed superseding indictment. (ROA.306.) With the consent of the Government and the approval of the district court, the Appellant entered a conditional guilty plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. (ROA.221.)

On July 31, 2024, the district court sentenced the Appellant to 120 months of imprisonment. (ROA.358.)  It further imposed 3 years of supervised release. (*Id.*)  The district court did not impose a fine, but the $100.00 special assessment was imposed as to each count. (*Id.*)  The district court entered its judgment on August 6, 2024. (ROA.258.)  The Appellant timely filed a notice of appeal on August 13, 2024. (ROA.242.)

## II.    Factual Background

**(A)   THE TRAFFIC STOP, SEARCH, AND ARREST.**

On August 21, 2023, the Appellant was traveling through Alton, Texas, and was pulled over by Deputy Jaime Garcia of the Hidalgo

County Sheriff's Office (HCSO) for an obstruction of the vehicle's license plate in violation of Section 504.945 of the Texas Transportation Code. (ROA.17.) TEX. TRANSP. CODE ANN. § 504.945. Upon initiating the stop, Deputy Garcia approached the Appellant's vehicle to address the purported traffic violation and discovered that the Appellant did not possess a valid driver's license nor insurance. *Id.* §§ 521.021, 601.191. The encounter then quickly escalated beyond the scope of a routine traffic stop relating to an obscured license plate.

While Deputy Garcia had detained the Appellant under the pretense of traffic violations, Deputy Garcia admitted, in a phone call with a colleague captured on his body camera, that he did not suspect the Appellant of any criminal activity relating to the traffic stop's initial purpose. (ROA.159, at 00:11:00.) In fact, Deputy Garcia tells this other officer, "I don't want to go full with the dog and everything … [and] I don't think he has anything on him right now." (*Id.*, at 00:11:20.) The officer tells Deputy Garcia, "I don't know, but I'll back you up … in case you want to go the whole nine yards." (*Id.*, at 00:12:00.) Deputy Garcia clearly disapprovingly sighs at the officer, and says, "Let me talk to him.

Let me get more out of him," followed by him re-approaching the Appellant's driver side to speak with the Appellant. (*Id.*, at 00:12:24.)

After making more irrelevant, small talk with the Appellant, Deputy Garcia orders the Appellant out of the vehicle and immediately begins patting him down for weapons. (*Id.*, at 00:12:38.) Deputy Garcia did not possess any reasonable suspicion to perform the frisk but nonetheless did so. (*Id.*, at 00:14:15.) Even while the driver door was open, Deputy Garcia did not smell anything—nor did any of the other deputies who arrived at the scene who were also next to the vehicle with its windows down and driver door open.

Deputy Garcia then questions the Appellant about any gang affiliations and proceeds to go to his unit to grab his ticket book. (*Id.*, at 00:15:00.) He begins filling out a ticket, and after writing all the Appellant's identification and vehicle information, but before he began writing the offense(s) alleged, he asked the Appellant again whether he could search the vehicle. (*Id.*, at 00:18:25.) The Appellant did not provide consent. (*Id.*) Deputy Garcia stated, as noted prior, "What I'm gonna [sic] do is run the dog *around* the vehicle, and if the dog alerts on the vehicle, I no longer need your consent." (*Id.*) (emphasis added).

Deputy Garcia then deployed his canine, "Ston," to perform a narcotics sniff on the Appellant's vehicle. (*Id.*, at 00:19:25.) Instead of running the canine around the exterior of the Appellant's vehicle, Deputy Garcia allowed the canine to enter the vehicle through the driver's front door even though the canine had not signaled that there was the presence of any drugs in the vehicle, which was a prerequisite for a lawful search. (*Id.*, at 00:20:28.)

Despite the canine's failure to alert to the presence of narcotics within the vehicle, Deputy Garcia claims that the canine positively alerted, and that he, Deputy Garcia, then smelled "a kilo of cocaine" inside the vehicle. (*Id.*, at 00:21:49.) Deputy Garcia, along with other deputies of the HCSO, then conducted their own search of the vehicle. The deputies found a (i) handgun under the driver's seat (*id.*, at 00:25:03), and (ii) a small amount of cocaine (0.44g) in the rear passenger seat pocket. (ROA.16.) The Appellant was then arrested on and charged with the charges of being a felon in possession of a firearm as well as possession of a controlled substance by the State of Texas, and later by the federal government.

7

**(B)** THE MOTION TO SUPPRESS, RESPONSE, AND HEARING.

On March 1, 2024, the Appellant filed his motion to suppress evidence stemming from the traffic stop conducted on August 21, 2023. (ROA.127.) The Appellant urged that the deputy had unreasonably prolonged the stop beyond what was necessary to complete the mission, and that the canine's entry of the vehicle prior to any signaling to the presence of drugs for probable cause to perform an evidentiary search rendered the search invalid. (*Id.*)

The Government filed its response on April 8, 2024, arguing that the stop was not unreasonably prolonged, the canine's entry was not improper, and that assuming *arguendo* that there was a constitutional violation—the inevitable discovery doctrine would apply through an impoundment and inventory search. (ROA.171–84.)

A hearing on the motion was held on April 25, 2024, before the district court on the limited issues of the inevitable discovery and the inventory search. (ROA.274.) At the hearing, the district court noted that there was no evidence of a departmental policy on inventory from what the Government had submitted in its response, and that the testimony of Deputy Garcia "would be helpful because otherwise, if it's a

close enough, [the Court] – you know, tie goes to the runner and [the Court would] probably rule in favor of the defendants on the – on the dog, whether the dog was enticed to enter at the open door[,] [s]o let's put that evidence on then." (ROA.280.)

On direct examination, Deputy Garcia had testified that Appellant would not have been permitted to drive away from the scene since he did not possess a valid driver's license and insurance. (ROA.283.) He further testified that the Appellant's vehicle "would [have] be[en] inventoried and impounded," and that such actions comported to his departmental policy on impounding and inventory searches. (ROA.283–84.) The district court had also mentioned, "[Deputy Garcia] said he's never had an exception" when it came to letting other driver's go under the same circumstances as the Appellant. (ROA.288.)

On cross examination, Deputy Garcia stated that the Appellant's vehicle would have been impounded and inventoried regardless of whether he had been arrested or cited in accordance with his departmental policy. (ROA.285.) But then when asked whether this occurs every time he pulls someone over and discovers they do not have a valid driver's license and insurance, Deputy Garcia responded,

"[U]sually[.]" And when asked, "But not always?" Deputy Garcia replied, "No." (ROA.285–86.)

Deputy Garcia then goes on provide a non-exhaustive list of examples of other situations where he does not impound and inventory vehicles—"[If] we have somebody else to pick it up," "If they have kids inside the vehicle," "[I]f it's raining," "[D]epending on whatever we want," and "[I]f they have a licensed driver." (ROA.286.) When further asked whether any of these "exceptions" were part of his departmental policy, Deputy Garcia stated, "No." (*Id.*) And when questioned whether he has ever let a person without a driver's license drive away, he said they usually will not, but then clarifies that he has not let someone that did not have a valid license though that other HCSO deputies have. (ROA.287.)

The Appellant then introduced a traffic citation issued by Deputy Garcia on August 5, 2022, for the offenses of not possessing a valid driver's license nor insurance. (ROA.287–88.) The citation, as printed by the HCSO, contains a checkbox for a deputy to fill out if the deputy intends on impounding the vehicle as confirmed by Deputy Garcia. (*Id.*) When questioned whether he had checked the box on that introduced

citation, Deputy Garcia said, "No," confirmed that the citation was issued, and that the person's vehicle was not impounded. (ROA.289.)

At the conclusion of the hearing, the district court made an oral ruling denying the Appellant's motion to suppress on the basis that the firearm and cocaine would have been found pursuant to an inventory search under the inevitable discovery doctrine. (ROA.292.) The district court stated:

> [The Court] do[es not] feel [it] need[s] to reach the issue with the dog. Probably, if [the Court] were required to, [the Court] would have ruled in favor of the [Appellant] on whether there was facilitation of the dog. […] But [the Court] do[es] find, based on the testimony, that the vehicle would have had an inventory search done, and in the inventory search the officer would have seen the gun under the driver's seat[.] So [the Court] [wi]ll deny the Motion to Suppress on those grounds, that would have been discovered anyway.

(ROA.292–93.) Following the denial of his motion to suppress, the Appellant pled guilty to the felon in possession of a firearm count charged against him. (ROA.306.) He did so pursuant to an agreement reserving his right to appeal the suppression ruling. (ROA.221.) The district court accepted the conditional plea. (ROA.306.) It sentenced the Appellant to 120 months of imprisonment as to Count 2, 70 months as to Count 3, to run concurrently with a term of 3 years of supervised released; and 24

months of imprisonment as to revocation of probation or supervised release to run consecutively to the aforementioned imprisonment term. (ROA.258, ROA.24-40525.208.) The Appellant timely appealed. (ROA.242.)

## SUMMARY OF THE ARGUMENT

The district court committed reversible error when it did not grant the Appellant's motion to suppress on the basis of unlawful prolongment. The district court did not make an express finding as to this argument, but the Appellant assumes that the district court denied the motion, in part, on that basis. However, the district court should have found that the deputy had unreasonably extended the traffic stop beyond what was necessary to complete the mission.

Secondly, the district court improperly found that the incriminating evidence would have been found pursuant to an inventory search through the inevitable discovery doctrine. The Government failed to introduce sufficient evidence of a standardized departmental policy for impounding and inventory searches as Deputy Garcia's testimony proved inconsistent and contradictory, and whatever "policy" could be extracted from his testimony further shows it is unconstitutionally overbroad.

Additionally, there was no credible evidence that Deputy Garcia would have impounded and inventoried the Appellant's vehicle as he has chosen not to in other instances where a driver does not possess a valid driver's license nor insurance "depending on whatever [h]e want[s]." Nor was there any evidence or mention made in the Government's response or at the hearing about what other "alternate line of investigation" was being pursued by law enforcement at the time of the constitutional violation that would have inevitably caused the Appellant's vehicle to be impounded and subsequently inventoried to find the firearm and cocaine evidence.

## STANDARD OF REVIEW

This Court reviews a district court's legal conclusions under the Fourth Amendment *de novo*, but its factual findings are reviewed for clear error. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). This Court also reviews the evidence "in the light most favorable to the prevailing party." *United States v. Wise*, 877 F.3d 209, 215 (5th Cir. 2017) (citation omitted).

ARGUMENT

**(A)  The District Court Erred in Not Finding That the Deputy Unnecessarily Prolonged or Delayed the Appellant Beyond the Time Reasonably Required to Complete the Mission of the Stop.**

**(i)  The DEPUTY'S CONTINUED DETENTION IS DEVOID OF REASONABLE SUSPICION OF ADDITIONAL CRIMINAL ACTIVITY OR CONSENT NECESSARY TO EXTEND THE MISSION OF THE STOP.**

The Appellant's motion to suppress argued that a central issue here is presented under *Rodriguez v. United States*, which analyzed whether extending a routine traffic stop to conduct a dog sniff is unconstitutional as an unreasonable seizure under the Fourth Amendment unless there is a reasonable suspicion of criminal activity; and further supported by the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Rodriguez v. United States*, 575 U.S. 348 (2015) (first quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)); U.S. CONST. AMEND. IV.

Deputy Garcia's continued detention of the Appellant, after completing the necessary tasks related to the initial purpose of the traffic stop, violated the Appellant's Fourth Amendment rights.   Although

Deputy Garcia had the discretion to initiate a traffic stop having observed that the rear license plate of the subject vehicle was obstructed by its covering of the name of the state in which the vehicle is registered, his authority to further detain the Appellant ended once he completed the stop's mission—that is, when he should have decided to issue a citation or not—extending the detention solely to conduct a dog sniff, without reasonable suspicion of criminal activity, constituted an unreasonable seizure under the Fourth Amendment of the U.S. Constitution.

Consequently, because Deputy Garcia continued to detain the Appellant after completing the mission for which Deputy Garcia stopped the Appellant—the district court erred by not suppressing evidence seized from the unconstitutional detention, search and seizure.

Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Even temporary detention of individuals during the stop of an automobile by the police–if only for a brief period and for a limited purpose–constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Wren v. United States*, 517 U.S. 806, 809-10 (1996).

Under established legal principles, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *United States v. Perkins*, No. 23-40356, 2024 U.S. App. LEXIS 17022 (5th Cir. July 11, 2024); *United States v. Smith*, 952 F.3d 642 (5th Cir. 2020). Furthermore, the court reasoned in *United States v. Martinez*, that to extend a stop beyond the time necessary to investigate the initial reason for the stop, an officer must develop reasonable suspicion of other criminal activity or obtain consent. *United States v. Martinez*, 102 F.4th 677, 683-84 (5th Cir. 2024); *United States v. Lozano-Alvarez*, 429 F. Supp. 3d 334, 339 (S.D. Tex. 2019).

The Supreme Court has clarified that any extension of a traffic stop beyond the time needed to address the traffic violation and attend to related safety concerns is unlawful unless justified by reasonable suspicion of additional criminal activity. *United States v. Spears*, 636 F. App'x 893 (5th Cir. 2016); *United States v. Howard*, No. 9:16-CR-15(4), 2016 U.S. Dist. LEXIS 173533 (E.D. Tex. Nov. 14, 2016).

The legality of a traffic stop for Fourth Amendment purposes is analyzed under the standard articulated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* standard involves a two-part

inquiry: (1) whether stopping the vehicle was initially justified by reasonable suspicion; and (2) whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place. *Id.* at 350; *United States v. Smith*, 506 F. App'x 319 (5th Cir. 2013) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).

A citation for a traffic violation is considered officially issued to the subject at the point when the officer has completed the necessary tasks related to the traffic stop. *United States v. Santiago*, 310 F.3d 336, 341 (5th Cir. 2002). Such as running a computer check and determining whether to issue a citation or not. *Id.* According to the Fifth Circuit, once these tasks are completed, the officer either issues the citation or decides not to issue one, and the detention should end, allowing the driver to leave. *United States v. Sanchez-Pena*, 336 F.3d 431 (5th Cir. 2003); *United States v. Cavitt*, 550 F.3d 430 (5th Cir. 2008).

During a traffic stop, an officer is permitted to request a driver's license, insurance papers, and vehicle registration, and to run a computer check on these documents. *Id.* at 436. The officer may also issue a citation during this time. *Id.* The detention must be temporary and last

no longer than necessary to effectuate the purpose of the stop. *United States v. Banuelos-Romero*, 597 F.3d 763 (5th Cir. 2010); *United States v. Glenn*, 931 F.3d 424 (5th Cir. 2019); *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004).

If the officer wishes to extend the detention beyond the issuance of the citation or the decision not to issue one, they must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed. *Sanchez-Pena*, 336 F.3d at 440. This ensures that the detention does not violate the Fourth Amendment by extending beyond the valid reasons for the stop. *Cavitt*, 550 F.3d at 436; *Santiago*, 310 F.3d at 341.

Here, Deputy Garcia advised his colleague over a telephone call, subsequent to having initially questioned the Appellant about the reason for the stop, returned to his unit and checked his computer, that he did not believe that the Appellant had anything on him; but that he would continue to question the Appellant to then discern what and how he could somehow have on the Appellant as a lawful basis to continue the Appellant's detention. Specifically, Deputy Garcia advised of the following:

**Deputy Garcia:**    Este vato, he's tied up to the cartel.[1]

**Other Officer:**    A bueno.[2]

**Deputy Garcia:**    Pero…[3]

**Other Officer:**    No tiene nada ahí?[4]

**Deputy Garcia:**    No, the thing is that I don't know if I wanna
go full with the dog and everything
'cause este vato se mueve, mueve kilos.[5]

**Other Officer:**    Que mueve medio que?

**Deputy Garcia:**    He moves kilos.

**Other Officer:**    O, pos dale gas, güey.

**Deputy Garcia:**    **Pero, I don't think, I don't think he has
anything on him right now.**

**Other Officer:**    **Oh, you don't?**

**Deputy Garcia:**    **No.**

**Other Officer:**    O y luego?[6]

---

[1] "This guy" (translated).

[2] "Okay" (translated).

[3] "But" (translated).

[4] "He doesn't have anything there?"  (translated).

[5] This guy he moves, moves kilos" (translated).

[6] "Oh and then?" (translated).

**...** (Radio Dispatch Relay Results from Running Name Search)

**Other Officer:**    I don't know what you wanna do, but I'll back you up, güey.[7]

**Deputy Garcia:**    (Sighs with exasperation)

**Other Officer:**    In case you wanna go the whole route, I mean the whole nine yards. Or he gives consent güey,[8] what do you think he'll say?

**Deputy Garcia:**    No, because he was coming from the apartment, and he told me he was coming from somewhere else.

**Other Officer:**    A no pos checalo güey.[9] Fuck it. En esos apartments tiene que haber algo entonces.

**Deputy Garcia:**    Sí,[10] I mean let me talk to him. Let me get more out of him.

**Other Officer:**    I'll back you up, güey.[11]

**Deputy Garcia:**    Bueno.[12]

---

[7] "Dude" (translated).

[8] "Dude" (translated).

[9] "Oh no well check him dude" (translated).

[10] "Yes" (translated).

[11] "Dude" (translated).

[12] "Okay" (translated).

(ROA.159, at 00:11:00.) (emphasis added).  Significantly here, what is clearly apparent from this exchange is that Deputy Garcia shared to his colleague that he did not believe that the Appellant had anything on him at that precise moment in time; but otherwise, based on a *mere* hunch believed that the Appellant moved kilos of some (illicit) substance.[13]  Furthermore, Deputy Garcia's colleague questions Deputy Garcia by asking him, "Oh, you don't?" in response to Deputy Garcia's prior statement that he does not believe that the Appellant has anything on him right now—to which, Deputy Garcia affirmatively answers, "No." This exchange clearly shows Deputy Garcia's state of mind in that he has not developed reasonable suspicion of additional criminal activity, other than a hunch, to further tolerate the traffic stop.

A mere hunch does not satisfy the legal requirement for additional reasonable suspicion supported by articulable facts during a traffic stop. *United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015).  The standard for reasonable suspicion requires more than an unparticularized hunch it necessitates specific and articulable facts that, when taken together

---

[13] Notably here, Deputy Garcia does not share to his colleague what controlled substance, if any, he believes the Appellant is believed to be transporting; and neither does his colleague question Deputy Garcia's suspicions, whether Deputy Garcia substantiated his suspicions.

with rational inferences from those facts, reasonably warrant the intrusion. *See United States v. Reyes*, 963 F.3d 482 (5th Cir. 2020); *United States v. Ballard*, 573 F.2d 913 (5th Cir. 1978).

The Fifth Circuit has held that the courts have consistently ruled that reasonable suspicion must be specific and [based on] articulable facts, not merely inarticulate hunches of wrongdoing. *Castillo*, 804 F.3d at 364. For instance, in *Castillo*, the Court emphasized that while a mere hunch does not create reasonable suspicion, the level of suspicion required is considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than is necessary for probable cause. *Id.; see Navarette v. California*, 572 U.S. 393, 397 (2014). Similarly, in *Reyes*, the court reiterated that a mere hunch does not create reasonable suspicion and that the officer must be able to point to specific and articulable facts. *Reyes*, 963 F.3d at 488. For example, conducting a canine sniff or asking unrelated questions that prolong the stop without reasonable suspicion is not permissible. *Martinez*, 102 F.4th at 677.

The totality of the circumstances must be considered in determining whether the officer's suspicion was reasonable, and the facts

must be judged against an objective standard. *Id.* This means that the officer's observations, when taken together, must provide a particularized and objective basis for suspecting legal wrongdoing, which is more than just a hunch. *Id.*

What is clear from the instant encounter is that Deputy Garcia cannot point to specific and articulable facts as per his prior statement to his colleague, *supra*, where he explained prior to his decision to unreasonably extend the detention that he did not believe the Appellant had anything on him right now, but that there may at some other undisclosed remote location. (ROA.159.) While Deputy Garcia claimed that he knew that people on federal probation have a condition of supervision that states they must comply and cooperate with law enforcement and that as a result the Appellant appeared nervous and was not forthcoming with information, the body camera contradicts this narrative. (ROA.183, ROA.159.)

It is apparent in viewing the body camera of Deputy Garcia, that Deputy Garcia is shown to incessantly ask the Appellant to grant consent and then as pretext reminds the Appellant that because he is on federal probation, he must cooperate with law enforcement. The Government

further argues this in its Response to the Defendant's Motion to Suppress Evidence when it provides that the Defendant was on parole and was supposed to cooperate and comply with law enforcement and was unwilling to cooperate. (ROA.176.)

However, the Appellant's unwavering election to waive his constitutional right to consent to a vehicular search does not equate to the Appellant's unwillingness to cooperate. The body camera demonstrates the Appellant's adherence to Deputy Garcia's instructions *albeit* unlawful at which point the mission of the initial purpose of the traffic stop should have concluded. (ROA.159.) Further, in viewing of the same, Deputy Garcia returns to his unit to check his computer and does not substantiate any other outstanding warrants or citations of that the Appellant and ultimately does not develop reasonable suspicion of additional criminal activity than what he had already ascertained during the initial questioning of the Appellant. (*Id.*)

In fact, when his other colleague suggests that Deputy Garcia again try to gain consent, Deputy Garcia says that the Appellant was traveling from an undisclosed apartment, where he and his colleague believe, without more and based on mere conjecture, that the apartment location

must have some kind of contraband or illicit substances. (ROA.159.) While Deputy Garcia mentioned to his colleague that the Appellant "moves kilo[gram]s," Deputy Garcia was not questioned by his colleague as to why he believed this to be the case; but rather, simply agrees to it at face value. (*Id.*)

Overall, the presence of articulable facts is essential to justify the extension of a traffic stop, and these facts must be specific, observable, and based on the totality of the circumstances, of which Deputy Garcia lacked at the time in which he prolonged the Appellant's detention thereof.

(ii)   **THE DEPUTY DID NOT DILIGENTLY PURSUE A MEANS OF INVESTIGATION TO VERIFY OR DISPEL HIS INITIAL SUSPICIONS WITHOUT UNNECESSARY PROLONGATION.**

The Appellant concedes Deputy Garcia's action of stopping him was initially justified because Deputy Garcia observed the Appellant driving with an obscured license plate, the cover surrounding the license plate did cover the name of the state in which the vehicle is registered to. TEX. TRANSP. CODE ANN. § 504.945.

Fundamentally, the key factor is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their

suspicions quickly, without unnecessary prolongation. *Brigham*, 382 F.3d at 511.

In the Fifth Circuit, a detainer during a traffic stop transforms into an arrest when the detention exceeds the scope and duration necessary to address the reason for the stop, or when the suspect is subjected to restraints comparable to those associated with a formal arrest. For instance, in *United States v. Zavala*, 541 F.3d 562 (5th Cir. 2008), the court found that a detention lasting one hour and thirty minutes, involving handcuffing, placement in a police car, and transportation to different locations, constituted a *de facto* arrest. *Id.*

The court in *United States v. Labrador-Peraza*, emphasized that a traffic stop cannot continue for an excessive period of time or resemble a traditional arrest, and must end once the purpose of the stop is resolved unless there is additional reasonable suspicion of criminal activity. *Id.* Additionally, in *United States v. Grant*, the court held that once the purposes of the stop are resolved and the officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts. *United*

*States v. Labrador-Peraza*, 563 F. Supp. 3d 568 (W.D. La. 2021); *United States v. Grant*, 349 F.3d 192 (5th Cir. 2003).

Here, Deputy Garcia initially stopped the Appellant for displaying an obscured license plate of which Deputy Garcia was justified to question the Appellant to produce a valid driver's license and proof of insurance up to when Deputy Garcia's initial suspicions had been verified or dispelled, which was at the time when Deputy Garcia should have determined whether to issue the citation or not—in other words, once the purpose of the stop has been completed, which was clearly before Deputy Garcia decides to conduct a canine sniff, having been denied consent on multiple occasions but ultimately having determined whether to issue a citation to the Appellant for the traffic violation.

Alternatively, however, Deputy Garcia proceeded to fill out the ticket, but just shortly before completing to fill out the same, Deputy Garcia instructed the Appellant to remove the plastic cover surrounding the license plate, which the Appellant complied with and removed it; however, right before issuing the same to the Appellant, Deputy Garcia again asks him for consent to search his vehicle without having additional reasonable suspicion and influences the Appellant decision to

finally consent to the vehicle search because he is reminded that he needs to cooperate with the law as per the advice by his probation officer. (ROA.159.)

Deputy Garcia further explains that he is going to run the dog around the vehicle without, again, having gained additional reasonable suspicion, but a hunch, to further detain the Appellant in an unreasonable manner. (*Id.*) It is at this point in time, when Deputy Garcia is again denied consent to search the vehicle that Deputy Garcia, dismayed by the repeated denials of consent, retreats back to his unit to place the citation inside his unit in order to run the dog first needlessly and in recalcitrance of the law. (*Id.*)

The time reasonably required to complete the mission of issuing a traffic ticket can include the time it takes to inspect the driver's license, automobile registration, and proof of automobile insurance; run computer checks; determine whether there are outstanding warrants against the driver, and ask the purpose and itinerary of the trip. *Spears*, 636 F. App'x at 901; *Rodriguez*, 575 U.S. at 355 (internal citations omitted). The officer must diligently pursue the investigation of the traffic violation. *Id.* at 354.

It is well established that additional investigation unrelated to the safe and responsible operation of the vehicle is permitted by the constitution only if the investigation does not lengthen the driver's detention or is supported by reasonable suspicion of additional criminal activity. *Id.* at 354-55. And absent reasonable suspicion of additional criminal activity, waiting for or conducting a dog sniff cannot prolong a stop justified by only a traffic violation beyond the amount of time reasonably required to complete the mission of issuing a traffic ticket and attending to related safety concerns. *Id.* at 353, 356.

In review of Deputy Garcia's body camera, what is apparent is that radio dispatch relays over the radio the results from running the Appellant's name, which did not yield any new information from what the Appellant had formerly shared with Deputy Garcia when initially questioned. (ROA.159.) Yet, while Deputy Garcia already believed that the Appellant did not have any contraband on his person nor the vehicle, he perpetuates his ponderance on what steps he should take to extend the Appellant's detention by any means necessary. This is clear when Deputy Garcia's colleague suggests to him that he does not know what Deputy Garcia would prefer to do, but that his colleague would back him

up, at which point Deputy Garcia is heard to have sighed with exasperation—perplexed in what further steps he is to take—but clearly disregards the issuance of a citation to complete the purpose of the initial stop. (*Id.*)

Significantly, Deputy Garcia tells his colleague that he will continue to question the Appellant to see what else he can get out of him to find some justifiable reason to conduct the canine sniff to ultimately circumvent Appellant's consent. (*Id.*) What is immediately apparent upon Deputy Garcia's return from his unit to the Appellant is he begins to lecture him about the amount of days the Appellant would have to pay the outstanding ticket from the City of McAllen—another jurisdiction— with no particular bearing as to the purpose for the initial stop. (*Id.*) Deputy Garcia engaged in small talk with the Defendant before having ordered him out of the vehicle and conducted a pat-down without reasonable suspicion. (*Id.*)

Despite the driver's door and windows being open, neither Deputy Garcia nor the other deputies at the scene detected any odor. Deputy Garcia questioned the Defendant about gang affiliations and returned to his unit to begin writing a ticket. (*Id.*) Before noting the offense, he again

requested permission to search the vehicle, which the Defendant declined. Deputy Garcia then stated he would conduct a K-9 search and leashed his dog, leading it to the driver's door.

The canine unlawfully entered the vehicle, after which Deputy Garcia claimed to smell a "kilo of cocaine," repeating this multiple times during the search. (*Id.*) The unlawful search revealed a handgun and 0.44 grams of cocaine. Despite this small amount, Deputy Garcia insisted the odor indicated more drugs. (*Id.*) Bodycam footage shows a spray pump containing green grass paint in the Appellant's trunk, which the Appellant mentioned earlier during the stop. (*Id.*) The paint may explain the odor Deputy Garcia referenced.

Given his advanced canine training, Deputy Garcia should be aware that simulated, not real, substances are used in scent detection training. Yet, the search yielded no significant drugs despite his persistent claims of detecting a strong cocaine scent.

A dog sniff is just not part of the mission of issuing a traffic ticket. *Id.* at 355. Authority for seizure ends when tasks tied to the traffic infraction are–or reasonably should have been—completed. *Id.* at 314.

Any traffic stop prolonged beyond that point is unlawful and violates a defendant's constitutional rights. *Id.* at 357. The Supreme Court in *Rodriguez* held that even a delay of six to eight minutes following a traffic stop where the driver is detained is a violation of the defendant's Fourth Amendment rights; the detention is not merely "de minimis" when the detention is not supported by reasonable suspicion garnered before the traffic stop concluded. *Id.* at 356.

Although the stop here may be legally sufficient because of an initial justification, Deputy Garcia did not act diligently in continuing the Appellant's detention to conduct a canine sniff and yielded an unreasonable prolongment in relation to the scope of the circumstances.

**(iii) THE DEPUTY'S PROLONGATION OF THE STOP TO ACCOMMODATE THE DOG SNIFF WAS UNJUSTIFIED.**

Finally, while the district court did not issue its written findings of fact and conclusions of law despite Appellant's request thereto, the trial court ultimately denied the Appellant's motion to suppress, which Appellant argues the district court erred in not finding that Deputy Garcia unlawfully extended the traffic stop beyond the time reasonably required to complete the mission of the stop. Accordingly, the district court stated the following:

**Defense:**     But just given those, in addition to that, we also did request findings of fact and conclusions of law just because we believe that it wasn't entirely clear as far as what those findings were. So, if Your Honor would like to issue that, or if we could prepare one and –

**Court:**     I mean, I'm just going to rely on the transcript. I think I articulated my reasons well enough.

**Defense:**     Yes, Judge.

**Court:**     So I don't have to write it out. It's there for appellate review. I mean, I just think there's no reason really to delay this case. You're the only defendant that's still out there. But if you're just not ready, you're not ready. I mean, at most, I'm going to move it a month.

**Defense:**     Yes, Judge, we would appreciate that. That should give us sufficient time. Again, this is not done for delay. My client is really the only one facing this Count Three in regard to what we contend is suppressible, but the Court –

**Court:**     Sure. Yeah, I know, and I told you I agree
with you on the dog aspect. But on the inventory, yeah, that car would have been impounded and inventoried and they would have found the gun anyway is where I ruled against you.

(ROA.303–04.)   However, as to be noted, it is unclear from the former suppression hearing what findings of fact were found as there is no mention as to the unreasonable prolongment issue during the suppression hearing held on April 25, 2024 *infra*, and subsequent final pretrial hearing held on May 3, 2024 *supra*.  (ROA.274.)  It is clear from the transcripts that the district court heavily relied on the inevitable discovery doctrine to deny the Appellant's motion to suppress as a whole without properly issuing its findings of fact and conclusions of law in order to form the proper basis for the denial of the instant motion altogether, even when counsel had requested the same because the district court shared that Deputy Garcia impeached himself but did not explain in what aspects or to what degree.  (ROA.274; ROA.298.)

In this case, Deputy Garcia admitted to a colleague that he did not believe the Appellant had anything illegal but would continue questioning him to see what he could find.  (ROA.159.)  This admission indicates that Deputy Garcia's actions were not based on reasonable suspicion of additional criminal activity but rather on a fishing expedition, which is impermissible under the Fourth Amendment. *See Grant*, 349 F.3d at 192.

Deputy Garcia's actions after completing the initial purpose of the stop further demonstrate an unreasonable prolongation. These actions included: (1) returning to question Mr. Villarreal further; (2) instructing Mr. Villarreal to exit the vehicle; conducting a pat-down; writing a ticket while instructing Mr. Villarreal to remove a license plate cover; (3) attempting to gain consent to search the vehicle; and (4) delaying issuing the ticket to conduct a canine sniff of the vehicle.

Each of these actions extended the duration of the stop beyond what was necessary to address the initial traffic violation. The Supreme Court in *Rodriguez* held that a traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. *Labrador-Peraza*, 563 F. Supp. 3d at 573. The Fifth Circuit has similarly held that an officer's subsequent actions are not reasonably related in scope to the circumstances that caused the stop if they detain its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops reasonable suspicion of additional criminal activity in the meantime. *United States v. Lindsay*, No. A-13-CR-032-LY, 2013 U.S. Dist. LEXIS 103410 (W.D. Tex. July 23, 2013).

In this case, Deputy Garcia's actions were not justified by any new reasonable suspicion of additional criminal activity. Instead, they were aimed at uncovering potential criminal activity without any specific basis for reasonable suspicion. This constitutes an unreasonable prolongation of the stop, violating the Fourth Amendment's ban on unreasonable seizures.

Finally, the legal doctrine of fruit of the poisonous tree requires that any evidence obtained as a result of an unlawful detention must be suppressed. *United States v. Diaz*, No. SA-04-CR-079-XR, 2004 U.S. Dist. LEXIS 10421 (W.D. Tex. June 2, 2004; *United States v. Parker*, No. 4:17-CR-00025-MAC-CAN, 2017 U.S. Dist LEXIS 212629. In *Wong Sun*, the Supreme Court held that evidence obtained through illegal means must be excluded from trial. *Wong Sun v. United States*, 371 U.S. 471 (1963). Similarly, in *Mendenhall*, the Court emphasized that any evidence derived from an unconstitutional detention must be suppressed. *United States v. Mendenhall*, 446 U.S. 544 (1980)

These acts by Deputy Garcia constituted an unreasonable prolongment beyond the time reasonably required to complete the mission of the stop, and therefore, any evidence obtained either directly

or indirectly must be suppressed.  If the government failed to prove such a search and seizure was reasonable under constitutional standards, any evidence obtained either directly or indirectly must be excluded.  *Wong Sun,* 371 U.S. at 488.  Evidence obtained as a result of an unlawful search must be suppressed under the "fruit of the poisonous tree" doctrine.  *See id.*

When the encounter is an investigatory stop, it must be temporary and last no longer than is necessary to effectuate the purpose of the stop, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion.  *See Mendenhall,* 446 U.S. at 544.  Thus, the detention for custodial interrogation intruding so severely on interest protected by the Fourth Amendment as to trigger traditional safeguards against illegal arrest and any incriminating evidence derived thereto are *fruits of the poisonous tree* and must be suppressed.

Therefore, the district court should have found that Deputy Garcia's actions constituted an unreasonable prolongation of the stop, requiring suppression of any evidence obtained as "fruit of the poisonous tree."  The detention exceeded constitutional limits, and any evidence

derived from it must be suppressed under the established legal standards in the Fifth Circuit.

**(B) The District Court Erred in Finding That the Deputy Would Have Found the Incriminating Evidence Pursuant to an Inventory Search Under the Inevitable Discovery Doctrine.**

**(i) THE DISTRICT COURT'S ORAL RULING.**

While the Appellant's motion to suppress briefed novel arguments that any entry of a governmental instrumentality (*i.e.*, the canine) to the Appellant's vehicle absent probable cause or consent was unconstitutional regardless of whether the officer had enticed the dog to enter the vehicle (ROA.127),[14] the district court nonetheless stated at the conclusion of the suppression hearing:

> All right. So I don't feel I need to reach the issue with the dog. Probably, if I were required to, I would have probably ruled in favor of the [Appellant] on whether there was facilitation of the dog. Also, the dog seemed to not be well-trained, didn't really think he alerted to where the drugs really were in the

---

[14] While there are cases that look to the officer's motive/intention when a canine enters a vehicle prior to determination of probable cause to search (*e.g.*, "The Fourth Amendment comes into play when an officer facilitates, encourages, or prompts a drug dog to enter a vehicle." *United States v. Shen*, 749 F. App'x 256, 262 (5th Cir. 2018))—the Appellant, in his motion to suppress, argued that the canine's entry into his vehicle, regardless of the officer's motive, was unconstitutional under *Lyons*, *Jones*, and *Jardines*. *United States v. Lyons*, 486 F.3d 367 (8th Cir. 2007); *United States v. Jones*, 565 U.S. 400 (2012); *Florida v. Jardines*, 569 U.S. 1 (2013). The district court noted that it would have found in favor of the Appellant on the basis of "facilitation," but nonetheless found in favor of the Government through the inevitable discovery doctrine.

car.  And anyway, I couldn't even tell that he alerted to the floorboard where the gun was, or in that cap.  I mean, maybe the -- anyway, I just couldn't see it.  But it still it looked like the dog was taken directly to the open door rather than doing a free air sniff around the vehicle.

But I do find, based on the testimony, that the vehicle would have had an inventory search done, and in that inventory search the officer would have seen the gun under the driver's seat, which was in plain view, just laying there on the floorboard underneath the driver's seat.[15]

So I'll deny the Motion to Suppress on those grounds, that would have been discovered anyway.

…

So what they did at the scene was an evidentiary search. The dog alerted to that location, so they opened the door and looked under the seats, and pulled out the gun. They had not yet impounded the vehicle and done an inventory search.

However, if the dog had not alerted, the officer testified there would have been an impounding of the vehicle because this person was alone, driving on a dry day, with no driver's license or proof of insurance; and that any time the county impounds a vehicle, they do an inventory search to make sure that there isn't valuables in there that the owner is going to allege were stolen out of the vehicle or taken by county officials or county officers. So they do it for the protection of the county, but also the protection of the person being arrested.

---

[15] The district court's finding as to "plain view" is misplaced as it states, in the same sentence, that the firearm would have been found *only after* an inventory search.  The Appellant wishes to make clear that the firearm was not in plain view, and especially so if it would have only been found subsequent to a search, whether inventory or through probable cause.

So it's that -- it inevitably would have been found.

…

So there was some impeachment, but I still found the policy -- his testimony about the policy credible and that his actions on this occasion would have been in conformance therewith.

…

I made my ruling, never been wrong on one in 22 years. Maybe this is my first but -- so again, I would have ruled in [the Defendant's] favor on the dog, but not on the inevitable -- the inventory search would have inevitably discovered the gun.

(ROA.292.)[16]  The inevitable discovery doctrine is a limit on the Fourth Amendment's exclusionary rule.  *United States v. Walker*, 49 F.4th 903, 909 (5th Cir. 2022).  It provides that "otherwise suppressible evidence [will be admitted] if that evidence would inevitably have been discovered by lawful means."  *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010).  It applies if "the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) that the Government was

---

[16] The Appellant assumes that the district court found that the search of his vehicle with the canine was unconstitutional—regardless of whether the canine's entry of the vehicle was facilitated by its law enforcement handler or unintentional.

actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Walker*, 49 F.4th at 909 (internal citations omitted).[17]

An analysis of whether certain evidence would have been discovered in an inventory search, including whether an inventory search would have occurred at all, should be based "upon the historical facts capable of ready verification [or impeachment], and not speculation." *United States v. De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998); *see also Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984) ("[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment[.]"). In determining the applicability of the inevitable discovery exception, a court may not speculate about what searches a law enforcement officer might have conducted absent a constitutional violation. *United States v. Thomas*, 787 F. Supp. 663, 683-84 (E.D. Tex. 1992).

---

[17] The Fifth Circuit's primary case was published in 1980 in the case-styled *United States v. Brookins*, where it opined that "for the testimony to be admissible under the inevitable discovery exception, the prosecution had to demonstrate (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternate line of investigation." *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980).

An inventory search is valid "if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (quotation marks and citations omitted). Such policies are not violative of the Fourth Amendment so long as they "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994); *Walker*, 49 F.4th at 909-10.

**(ii) THE DEPUTY'S TESTIMONY DID NOT ESTABLISH A STANDARDIZED DEPARTMENTAL POLICY FOR IMPOUNDING AND INVENTORYING VEHICLES NOR THAT AN ADMINISTRATIVE SEARCH WAS REASONABLY PROBABLE ALONG WITH ACTIVE PURSUIT OF AN ALTERNATIVE INVESTIGATION.**

The Appellant was pulled over for having an obstructed license plate. (ROA.171.) During the traffic stop, it was discovered that the Appellant did not have a valid driver's license nor insurance for the vehicle. (*Id.*) As quoted from the transcript:

**Government:**         Based on that, would Villarreal have been permitted to drive away from the scene?

**Deputy Garcia:**     No.

**Government:**     Why not?

**Deputy Garcia:**     For licensing reasons, if I would have let him go, he gets in an accident, it will fall back on me for allowing him to drive with no driver's license.

**Government:**     Or insurance?

**Deputy Garcia:**     Insurance.

**Government:**     And what would have happened to the vehicle?

**Deputy Garcia:**     It would be inventoried and impounded.

**Government:**     Inventory, that would have been an inventory search?

**Deputy Garcia:**     Well, inventory is for belongings, anybody with belongings. The reason we do inventory is let's say he has [sic] Rolex watch inside the vehicle and we find it, we put it in inventory so that it won't come back at us if it turns up missing. That's the reason we do the inventory.

**Government:**     And that would occur prior to the car being towed?

**Deputy Garcia:**     Yes.

**Government:**     And impounded?

| | |
|---|---|
| **Deputy Garcia:** | Impounded. |
| **Government:** | And a deputy would have conducted that inventory search? |
| **Deputy Garcia:** | Yes, any deputy would have done it. |
| **Government:** | Is that in line with your department policy? |
| **Deputy Garcia:** | Yes. |
| **Government:** | And subject to the inventory search -- well, did you recover a firearm in the vehicle? |
| **Deputy Garcia:** | Underneath the driver's seat. |

(ROA.283–84.)  The inevitable discovery doctrine presupposes that a constitutional violation has occurred.  *See United States v. Watkins*, 13 F.4th 1202, 1209 (11th Cir. 2021).   Therefore, it is the burden of the Government to prove that "there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct."  *Jackson*, 596 F.3d at 241.  These "lawful means," claimed by the Government, is the possibility of an inventory search.  (ROA.171.)[18]  Whether the occurrence of the inventory search

---

[18] "One lawful means by which the police may discover evidence is to conduct an inventory search of an impounded vehicle, as 'inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment.'" *United*

was reasonably probable is what the Appellant disputes.  While Deputy

Garcia made it appear, on direct examination, that the inventory search

was effectively certain, his cross examination shows otherwise:

> **Defense:**          You stated that pursuant to your department's policies, regardless of whether my client would have been arrested, you would have towed his vehicle anyway?
>
> **Deputy Garcia:**    Yes.
>
> **Defense:**          And that's according to your departmental policy?
>
> **Deputy Garcia:**    Yes.
>
> **Defense:**          For every single time that you pull someone over and you discover that they don't have a driver's license and no insurance, you tow their vehicle?
>
> **Deputy Garcia:**    We usually do impound it unless we have somebody else to pick it up.
>
> **Defense:**          Usually?
>
> **Deputy Garcia:**    Yes.
>
> **Defense:**          But not always?
>
> **Deputy Garcia:**    No.

---

*States v. Bradley*, 959 F.3d 551, 557 (3d Cir. 2020) (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)).

**Defense:**            So what other situations --

**Deputy Garcia:**      An example would be if they have kids inside the vehicle, we won't impound it.

**Defense:**            Is that part of your policy?

**Deputy Garcia:**      No.

**Defense:**            No, okay.  Let's see -- so again, there have been situations where --

**Deputy Garcia:**      Yes, if the driver has kids inside, then we wouldn't -- if it's raining, depending on whatever we want.

**Defense:**            What other situations?

**Deputy Garcia:**      What?

**Defense:**            Any other situations you might not choose to tow?

**Deputy Garcia:**      No, I can't --

**Court:**              Well, I guess if there was another licensed driver in the vehicle, like a —[19]

**Deputy Garcia:**      Like if they have a licensed driver, then we'll let it go.

**Court:**              Like a --

---

[19] The district court later stated that Deputy Garcia stated that he did not know the facts of the case surrounding the citation, "but he thought likely there was probably a licensed driver in the other seat."  (ROA.294.)  As can be seen from the transcript, Deputy Garcia never stated he thought there was a licensed driver for the referenced traffic citation.  (ROA.286.)

46

| | |
|---|---|
| **Defense:** | Have you ever let the vehicle go with someone who didn't have a driver's license? |
| **Deputy Garcia:** | No, we probably wouldn't have let them go. |
| **Defense:** | Usually? |
| **Deputy Garcia:** | Yes. |
| **Defense:** | So it's not always? |
| **Deputy Garcia:** | Most of the time. |
| **Defense:** | So not always? |
| **Deputy Garcia:** | No. |
| **Defense:** | So have you let people go? |
| **Deputy Garcia:** | Me, no. But other deputies, yes. |

(ROA.285.)  As contrarily testified by Deputy Garcia, he does not always tow and further perform an inventory search of people's vehicles under the circumstances of the Appellant's, and further deviates from his department's policy by his own admission (and sometimes on the basis of "whatever we want").  (ROA.286.)  Deputy Garcia first testified that the Appellant's vehicle would not have been permitted to "drive away from the scene," but upon cross examination, explains that in other incidents

involving the same traffic violations (*i.e.*, no driver's license and/or insurance) the person stopped has been permitted to drive away. (ROA.286–87.)

Then, Deputy Garcia testified that the Appellant's vehicle would have been impounded, but again, on cross examination, states that sometimes he does not impound and perform the inventory search. (*Id.*) These statements are contradictory, and casts doubt as to whether Deputy Garcia's recitation of his departmental policy is correct, whether he would have followed this "departmental policy," and whether the inventory search of the Appellant's vehicle was "reasonably probable" or otherwise "inevitable." Deputy Garcia's testimony demonstrates that impoundment and inventory searches were subject to his personal discretion rather than governed by a standardized, mandatory departmental policy. This discretionary practice contradicts the requirement that inventory searches be conducted pursuant to standardized procedures, rendering the search invalid under the inevitable discovery doctrine.

Further, on cross examination, the Appellant introduced a traffic citation issued by Deputy Garcia a year prior to the stop of the Appellant

(ROA.287–88), only a block away, which showed that the person stopped did not have a driver's license nor insurance, but Deputy Garcia nonetheless permitted the person to "drive away from the scene."

**Defense:** This policy, can you explain the policy again for your department on impounding and inventory?

**Deputy Garcia:** The procedure that we do is, like I mentioned before, the reason we impound or inventory is, if a person has money inside the vehicle, we note it on the impound sheet.

…

**Defense:** It's for impeachment, Your Honor, just to show that he doesn't always tow the vehicle when they issue a citation.

**Court:** Okay. I'm sure I'll -- go forward. He said he's never had an exception.

**Defense:** So, Deputy, so can you look at the exhibit [traffic citation] that was just tendered to you?

**Deputy Garcia:** Yes.

**Defense:** Can you explain to us what it is?

**Deputy Garcia:** It's a ticket for a motor violation.

**Defense:** Okay.  Do you recall issuing the citation?

**Deputy Garcia:**     No, I don't.

**Defense:**     If you turn to the page where it shows a citation, somewhere in the middle does it show a check box for you to pick if you're going impound the vehicle?

**Deputy Garcia:**     Yes.

**Defense:**     Did you pick it?

**Deputy Garcia:**     No.

…

**Defense:**     If you're going to impound a vehicle, do you generally pick that box?

**Deputy Garcia:**     Yes, I do.

**Defense:**     Okay. And you didn't pick it in this situation?

**Deputy Garcia:**     No.

**Defense:**     But you did issue this person a citation --

**Deputy Garcia:**     Yes, I did.

**Defense:**     -- for both these offenses and didn't tow the vehicle?

**Deputy Garcia:**     No, like I said, if there was a licensed driver or somebody else picked it up.

**Defense:**     Okay.

**Deputy Garcia:**      Or he had a child.

(ROA.287–90.)    Thus, it was not reasonably probable that an inventory search would have been performed on the Appellant.    The Government did not introduce any evidence, nor did Deputy Garcia testify as to how the Appellant's situation was different than those from these other persons that Deputy Garcia has "let go" under the same circumstances.

"It does not, however, render reasonable a search where the inventorying practice is not locally followed and the search, thus, is a departure from local practice.    A locally followed practice gives some assurance that a particular car was not singled out for special searching attention." *United States v. Hellman*, 556 F.2d 442, 444 (9th Cir. 1977). However, through Deputy Garcia's testimony, the Appellant's vehicle was apparently singled out for special searching attention—and it is obvious—Deputy Garcia's conduct suggests a willingness to circumvent procedural safeguards to conduct an evidentiary search, rather than following a standardized inventory search protocol.

Other circuits have found that an inventory search was not reasonably probable, such as the Second Circuit Court of Appeals in the

case of *United States v. Gorski*. *United States v. Gorski*, 852 F.2d 692, 696 (2d Cir. 1988); *see also Hellman*, 556 F.2d at 444. In the case of *Gorski*, the district court had found that cocaine would have been inevitably found pursuant to an inventory search after the defendant's arrest. *Gorski*, 852 F.2d at 696. But the Second Circuit Court of Appeals reversed this decision by stating, "[T]here was no evidence to support the further necessary finding that it was inevitable that such an inventory search would be conducted. A thorough review of the record reveals no evidence that such searches were an invariable, routine procedure in the booking and detention of a suspect at the particular FBI office involved." *Id.*

"[I]f an inventory search would have been reasonable, the government must prove that it would have been inevitable in this particular case." *United States v. Morillo*, No. 08 CR 676 (NGG), 2009 U.S. Dist. LEXIS 94421, at *45 (E.D.N.Y. Aug. 12, 2009). In the instant matter, the record is unclear as to whether the inventory search was inevitable as per Deputy Garcia's testimony.

As stated by a federal district court in Wyoming in the case of *United States v. Ibarra*, the routineness of the impounding and inventory search also rests on the officer(s) doing the search:

> Although it may be the policy of the Wyoming Highway Patrol to inventory vehicles it impounds, it is clear from the evidence that it is not necessarily the routine practice of Officer Mahaffey. The court finds that the Government has not met its burden of showing that it was inevitable that Mahaffey would have conducted an inventory search of Ibarra's vehicle. Instead, the evidence indicated that such searches were not an invariable routine procedure of this officer.

*United States v. Ibarra*, 725 F. Supp. 1195, 1204 (D. Wyo. 1989). Just like the *Ibarra* case, although it may be the policy of the Hidalgo County Sheriff's Office to inventory vehicles it impounds for no driver's license and/or insurance, the record reflects that it is not necessarily the routine practice of Deputy Garcia. *Cf. Id.* Put simply, Deputy Garcia's inconsistent testimony regarding when vehicles are impounded reveals that such decisions are made at the officer's discretion rather than pursuant to a standardized policy.

This discretionary approach directly undermines the Government's claim that an inventory search was inevitable in this case. And Deputy Garcia's shifting explanations regarding impoundment procedures and his discretionary decisions raise serious doubts about the credibility of

the Government's claim that an inventory search was inevitable. The Government's failure to present corroborating evidence of a consistent departmental policy further undermines its argument.

"An inventory search must be reasonable under the totality of the circumstances; therefore, law enforcement may not use an inventory search as 'a ruse for general rummaging in order to discover incriminating evidence.'" *United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020) (per curiam) (internal citation omitted); *United States v. Williams*, 39 F.4th 1034, 1043 (8th Cir. 2022).

The United States Supreme Court, in *Colorado v. Bertine*, affirmed that inventory searches are reasonable for Fourth Amendment purposes when "administered in good faith," "according to standard criteria and on the basis of *something other than suspicion of evidence of criminal activity*." *Colorado v. Bertine*, 479 U.S. 367, 374-75 (1987) (emphasis added). Moreover, the Supreme Court *in dicta* has suggested that the inventory search doctrine may be an example in which an officer's improper motive can invalidate "objectively justifiable behavior under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 464 (2011)

(quoting *Whren*, 517 U.S. at 812.); *United States v. Williams*, 930 F.3d 44, 56 (2d Cir. 2019).

Deputy Garcia's various versions of the standardized policy for impounding and inventorying of a vehicle shows that the Government itself cannot demonstrate that, with reasonable probability, that Deputy Garcia would have performed an inventory search of the Appellant's vehicle and that such actions would have been taken in good faith. Again, Deputy Garcia has testified that he does not even follow his own department's policy on inventorying and impounding vehicles. (ROA.286.) Therefore, it would be too speculative to find that Deputy Garcia would have performed the impoundment and inventory search. *See United States v. Holland*, No. H-09-512, 2011 U.S. Dist. LEXIS 5261, at *36 (S.D. Tex. Jan. 20, 2011) ("The government's conclusion that the evidence 'would have been discovered' through an inventory search is too speculative to warrant the application of the inevitable-discovery doctrine."); *Zavala*, 541 F.3d 562.[20] Deputy Garcia's testimony lacks such

---

[20] The Supreme Court has cautioned against speculative reasoning in the context of inevitable discovery, requiring proof grounded in "historical facts capable of ready verification or impeachment[.]" *Nix*, 467 U.S. at 444 n.5.

verifiable facts, relying instead on hypothetical and discretionary practices.

There is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient, *see United States v. Como*, <u>53 F.3d 87, 92</u> (5th Cir. 1995), as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures, *see United States v. Bullock*, <u>71 F.3d 171, 178</u> (5th Cir. 1995). *United States v. Lage*, <u>183 F.3d 374, 380</u> (5th Cir. 1999). However, such testimony must still be credible and consistent. *See United States v. Foots*, <u>340 F. App'x 969, 973</u> (5th Cir. 2009) ("Uncontradicted testimony … established that the police department required its officers to conduct inventory searches[.]").

In this case, Deputy Garcia's statements about impoundment procedures were inconsistent and conflicted with his own past practices. His testimony lacks the consistency and clarity necessary to establish that he acted in accordance with standardized procedures, and the Government's failure to introduce a written policy further weakens its position.

The district court's conclusion that the firearm would have been inevitably discovered rests on impermissible speculation.[21]  Courts may not engage in conjecture about hypothetical searches but must rely on "historical facts capable of ready verification or impeachment." *Nix*, 467 U.S. at 444 n.5. Deputy Garcia's inconsistent testimony and lack of supporting evidence fail to meet this standard.

Further, Deputy Garcia's "impending" decision to have impounded the Appellant's vehicle would have been done in bad faith for the sole purpose of being a ruse for general rummaging in order to discover incriminating evidence as it would be a selective enforcement of the standardized policy that Deputy Garcia claims exists (and admittedly does not always follow under circumstances to his liking).[22]  Courts have consistently held that inventory searches conducted in bad faith or used

---

[21] Deputy Garcia clearly has an incentive to testify to a version of events that comports with the Fourth Amendment after realizing that this traffic stop was tainted.  *See United States v. Doe*, 801 F. Supp. 1562, 1576 (E.D. Tex. 1992) ("On the other hand, Officer Crow has the incentive to testify to a version of events that comports with the Fourth Amendment.").

[22] Deputy Garcia's deployment of a canine unit contradicts the Government's claim that impoundment and inventory were inevitable.  If impoundment was certain, there would have been no need to seek probable cause through a canine sniff.  This behavior suggests an improper investigatory motive, rendering the search unconstitutional.

as a pretext for investigatory searches violate the Fourth Amendment. *Bertine*, 479 U.S. at 374-75; *Williams*, 930 F.3d at 56.

Deputy Garcia's selective application of the department's policies suggests the search of the Appellant's vehicle was not conducted in good faith but rather as a means to justify an evidentiary search. This selective application is supported by the fact that Deputy Garcia had already possessed a "hunch" that the Appellant was engaged in criminal activity prior to both the dog sniff and this inevitable impounding and inventory search in addition to Deputy Garcia's partner actively encouraging Deputy Garcia to find any reason to search the Appellant's vehicle. (ROA.127.)

The Government must also demonstrate that it was actively pursuing an alternative legal avenue at the time of the constitutional violation. *See United States v. Cherry*, 759 F.2d 1196, 1205 (5th Cir. 1985). This element is also very crucial because it focuses on what steps and processes were put into action/play by an officer instead of what the officer may have hypothetically done.

In *Walker*, a tow truck was already called, and the defendant was given the opportunity to call his girlfriend to pick up his vehicle. *Walker*,

49 F.4th at 906–10.  By the time she arrived, the defendant's vehicle "was already hooked up to a tow truck."  *Id.*  The opinion and order of the district court in *Walker* had noted:

> Officer Foster completed the tow slip and inventory search paperwork for the vehicle. Defendant was afforded the opportunity to call someone to pick up the vehicle. But by the time that person arrived an hour later, Defendant's vehicle was already attached to the tow truck.

*United States v. Walker*, No. H-20-222, 2021 U.S. Dist. LEXIS 47011, at *6-7 (S.D. Tex. Mar. 12, 2021).  Thus, law enforcement in that case was already pursuing a substantial alternate line of investigation at the time of the constitutional violation.

In other cases before the Fifth Circuit, it is apparent that, at least, *some* steps were taken by law enforcement.  *See, e.g.,* U*nited States v. Seals,* 987 F.2d 1102, 1108 (5th Cir. 1993) ("The record reveals that prior to the search conducted by Officer McClure and the K-9 unit, Officer Scott had already decided to impound the vehicle, and had begun the necessary paperwork."); *United States v. Ochoa*, 667 F.3d 643, 650 (5th Cir. 2012) ("Indeed, pursuant to those procedures, agents began taking an inventory of Ochoa's car shortly after the cell phone was seized."); *Jackson*, 596 F.3d

at 242 ("[A]n ongoing grand jury investigation that has already led to an indictment would clearly [satisfy the active-pursuit element.]").

The district court should have found that there was no active pursuit of an alternate line of investigation just as other courts have. *See Holland*, 2011 U.S. Dist. LEXIS 5261, at *36. "We reversed [in *Cherry*] on the ground that there was no evidence that, at the time of the warrantless search, the officers had begun actively to pursue a warrant[.]" *Lamas*, 930 F.2d at 1103; *Cherry*, 759 F.2d at 1206 ("No finding was made, however, that the agents were actively pursuing a warranted means of searching the ceiling at the time the misconduct occurred.").

Deputy Garcia's failure to initiate an inventory search or impoundment process before conducting the evidentiary search undermines the Government's claim that lawful discovery was inevitable.[23] No evidence suggests that impoundment was underway or that any steps had been taken to inventory the vehicle, nor did the

---

[23] As can be seen from the bodycam video, Deputy Garcia had not filled out the portion of the citation that has the checkbox for an impoundment. (ROA.159, at 00:19:35.)

district court make any such finding. This omission is fatal to the Government's reliance on the inevitable discovery doctrine.

To the extent that the "alternate line of investigation" has not yet formed, its existence must be "imminent" to qualify for the inevitable discovery exception. *United States v. Grigsby*, No. CRIMINAL ACTION H-21-356, 2022 U.S. Dist. LEXIS 70837, at *39 (S.D. Tex. Apr. 18, 2022); *Cherry*, 759 F.2d at 1205 n.10. As previously noted, the impoundment and inventory search of the Appellant's vehicle was not imminent as Deputy Garcia took no actions suggesting that such impounding would have been done. There exists no such historical fact here. *See Lamas*, 930 F.2d at 1104 ("We note that, in this case, the government has presented 'demonstrated historical facts': the testimony of Officers DuBois and Garcia that Officer DuBois had in fact left to get a warrant."). The Court in *Lamas* had explained:

> [W]hen the police have not been in active pursuit of an alternate line of investigation that is at a minimum supportable by leads, the general application of the inevitable discovery exception would greatly encourage the police to engage in illegal conduct because (1) the police would usually be less certain that the discovery of the evidence is "inevitable" in the absence of the illegal conduct and (2) the danger that the evidence illegally obtained may be inadmissible would be reduced. While suppression in such a case may put the prosecution in a worse position because of

the police misconduct, a contrary result would cause **the inevitable discovery exception to swallow the rule by allowing evidence otherwise tainted to be admitted merely because the police could have chosen to act different and obtain the evidence by legal means.**

*Id.* at 1204–06 (emphasis added).   The Fifth Circuit Court of Appeals further explained that:

> When the police forego legal means of investigation simply in order to obtain evidence in violation of a suspect's constitutional rights, the need to deter is paramount and requires application of the exclusionary rule. *See United States v. Satterfield*, 743 F.2d at 846 ("The Government cannot later initiate a lawful avenue of obtaining the evidence and then claim that it should be admitted because its discovery was inevitable."); *United States v. Alvarez-Porras*, 643 F.2d 54, 64 (2d Cir.) ("we will not risk the whittling down of the warrant requirement . . . by justifying the admission of evidence under a broad inevitable-discovery exception"), *cert. denied*, 454 U.S. 839, 102 S. Ct. 146, 70 L. Ed. 2d 121 (1981); *United States v. Griffin*, 502 F.2d 959, 961 (6th Cir.) ("police who believe they have probable cause to search cannot enter a home without a warrant merely because they plan subsequently to get one"), *cert. denied*, 419 U.S. 1050, 95 S. Ct. 626, 42 L. Ed. 2d 645 (1974).

*Id.*   This case, like those that have come before it invoking the inevitable discovery exception, is not one "in which the prosecution can escape responsibility for a constitutional violation through speculation; to the extent uncertainty was created by the constitutional violation the

prosecution was required to resolve that uncertainty through proof." *Nix*, 467 U.S. at 457 (Stevens, J., concurring).

The Fifth Circuit has, however, opined that "[i]n certain circumstances, however, such as when the hypothetical independent source comes into being only after the misconduct, the absence of a strong deterrent interest may warrant the application of the inevitable discovery exception without a showing of active pursuit by the government in order to ensure that the government is not unjustifiably disadvantaged by the police misconduct." *Cherry*, 759 F.2d at 1206. Though, that is not the case here as the hypothetical independent source—impounding and inventory search—came into being when, according to the Government, it was discovered that the Appellant did not possess a valid driver's license nor insurance. Hence the active-pursuit element has not been dispensed.

**(iii)** **THE DEPARTMENTAL POLICY DOES NOT SUFFICIENTLY LIMIT THE DISCRETION OF LAW ENFORCEMENT.**

As previously noted, an inventory search policy must "sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *Andrews*, 22 F.3d at

<u>1336</u>.   During the continued cross examination of Deputy Garcia, the discretionary limitations were discussed:

| | |
|---|---|
| **Defense:** | All right.  Let's go back to your policies.  In your policies, Deputy, do these policies limit your discretion of what you can search during the inventory? |
| **Deputy Garcia:** | No.   It's just for any items in the vehicle. |
| **Defense:** | So you can choose to search anything? |
| **Deputy Garcia:** | Inside the vehicle. |
| **Defense:** | Inside the vehicle? |
| **Deputy Garcia:** | Inside the vehicle. |
| **Defense:** | Nothing says -- |
| **Deputy Garcia:** | The trunk. |
| **Defense:** | Nothing says, hey, there's a locked compartment, can I search that? |
| **Deputy Garcia:** | We wouldn't open it. |
| **Defense:** | So you can basically choose, again, what you want to search? |
| **Deputy Garcia:** | If it's secured, no. |
| **Court:** | Well, he said he wouldn't open a locked compartment. |
| **Defense:** | Okay. |

(ROA.290.)  There is no evidence on the record, whether through other introductions by the Government or Deputy Garcia's testimony, that the departmental policy is sufficiently limited.  When asked whether the policy limits Deputy Garcia's discretion in what he can search, he said, "No. It's just for any items in the vehicle."  (*Id.*)  When asked what he can search, Deputy Garcia stated he could search anything "inside the vehicle."  (*Id.*)  Rather than stating that the departmental policy would prohibit him from opening a locked compartment in the vehicle, he simply stated, "We wouldn't open it," and further reiterated by the district court: "[H]e said he wouldn't open a locked compartment."  (*Id.*)  What Deputy Garcia would or wouldn't do is a separate matter than whether his departmental policy allows or prohibits him from doing so.  Additionally, Deputy Garcia admittedly deviates from his departmental policy when certain circumstances to his liking exist and thus allows others to "drive away from the scene" despite not having a driver's license nor insurance. (ROA.285–90.)

Therefore, the policy described by Deputy Garcia failed to sufficiently limit officer discretion, permitting arbitrary decisions regarding impoundment and inventory searches—which is what is

happening here.  Such unchecked discretion violates constitutional standards for inventory searches under *Andrews*.  *Id.*  The Supreme Court has explicitly held that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, <u>495 U.S. 1, 4</u> (1990).

The absence of clearly defined standardized procedures in Deputy Garcia's testimony demonstrates a level of officer discretion that undermines the constitutionality of the search.  Without specific guidelines limiting officers' authority, the purported inventory search risks serving as a pretext for an investigatory search.

The Government has failed to meet its burden under the inevitable discovery doctrine.  Deputy Garcia's inconsistent testimony, the absence of standardized procedures, and the speculative nature of the district court's findings render the firearm and controlled substance inadmissible.  Accordingly, this Court should reverse the district court's denial of the motion to suppress and remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court should **REVERSE** the district court's oral ruling denying the Appellant's motion to suppress evidence,

**VACATE** his conviction and sentence, and **REMAND** this case to the district court for further proceedings consistent with the opinion of the Court.

Respectfully submitted,

**STATESMAN LAW FIRM, PLLC**

P.O. Box 6494
McAllen, Texas 78502
Tel:   (956) 515-2551
Fax:  (956) 515-2511

*/s/ Uriel A. Guajardo*
URIEL A. GUAJARDO
State Bar No. 24095968
Fed. ID No. 3381376
alex@statesmanlex.com

**VERITUM LAW GROUP, PLLC**

P.O. Box 1971
Pharr, Texas 78577
Tel:   (956) 502-0949
Fax:  (956) 502-0999

*/s/ Simran W. Singh*
SIMRAN W. SINGH
State Bar No. 24119365
Fed. ID No. 3768477
simran@veritumlaw.com

**COUNSEL FOR DEFENDANT–APPELLANT GERARDO VILLARREAL**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Brief of Appellant Gerardo Villarreal was served on this 21st day of January, 2025, via CM/ECF filing to:

Carmen Castillo Mitchell
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
Counsel for United States of America
1000 Louisiana Street, Suite 2300
Houston, Texas 77002-5010

carmen.mitchell@usdoj.gov
usatxs.appellate@usdoj.gov

*Via CM/ECF.*

*/s/ Simran W. Singh*
SIMRAN W. SINGH

## CERTIFICATE OF COMPLIANCE

(1)    This document complies with the type-volume limit of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by Rule 32(f), *supra*, and Rule 32.1 of the Fifth Circuit Rules, because this brief contains 12,852 words.

(2)    This document complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and Rule 32.1 of the Fifth Circuit Rules, and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, in Century Schoolbook, 14-point typeface, except for footnotes, which are in Century Schoolbook, 12-point typeface.  Case names are italicized or underlined.

(3)    This document complies with the privacy-redaction requirement of Rule 25.2.13 of the Fifth Circuit Rules because it has been redacted of any personal data identifiers.

(4)    This document complies with the electronic-submission requirement of Rule 25.2.1 of the Fifth Circuit Rules because it is an exact copy of the paper document.

(5)    This document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.


*/s/ Simran W. Singh*
SIMRAN W. SINGH